## Ernest Augustus, Duke of Cumberland, Masterton Ure and John Gordon, *vs.* Almerin Graves.

A defect in the proof of a grant, from a state to individuals, offered in evidence at the circuit, on the trial of an action of ejectment, will be cured by the production, upon the argument, of copies of the resolutions and act of cession, duly authenticated according to the act of congress.

A trust must be manifested, and proved, by writing.

But a trust in land purchased need not be made at the time of the purchase. It may be created, or acknowledged, after the execution of the conveyance.

Where an act of the legislature, authorizing aliens to purchase and hold real estate within this state, declared that all and every conveyance and conveyances thereafter to be made or executed to any alien or aliens, &c., should be deemed valid to vest the estate thereby granted, in such alien or aliens; *Held* that the language was sufficiently comprehensive to embrace sales, purchases, and conveyances *in trust.*

Where a statute provided and declared that deeds and conveyances made in pursuance of a former act, which authorized and enabled aliens to purchase and hold real estate within this state, should vest the lands conveyed, so far forth as related to the question of alienism, in the grantees therein named, and their heirs and assigns, in such manner as to authorize such grantees, their heirs and assigns, being aliens, to give, devise, grant, sell and convey the same to any other alien or aliens; *Held* that it was the intention of the legislature to remove the objection of alienism in case of any number or succession of descents from one alien to another, and also in case of any number of grants or devises between aliens.

*Held also,* that the terms " heirs and assigns," as used in such statute, were not to be restricted to the immediate heirs or assigns of the grantees in such deeds &c., but that they extended to all persons who might inherit the lands, or to whom they might descend, or be assigned.

Under the act of April 2, 1798, allowing aliens to take conveyances of real

Duke of Cumberland *v.* Graves.

estate situated in this state, a release may be executed by one of several trustees in a deed of trust, to his co-trustees, of his estate and interest in the trust property, although the parties to such release are all aliens.

Immaterial and irrelevant recitals in an appointment and conveyance, if not repugnant, inconsistent or illegal, can not have the effect to render nugatory the provisions which are material and pertinent.

Where a will, which is valid on its face, conveys real estate to trustees, in trust, and the objects of the trust are clearly defined, and are not, at the time the will takes effect, illegal, the trustees acquire a perfect legal title; and in an ejectment brought by them against a stranger and intruder without color or claim of title adverse to that of the plaintiffs, the latter can not be required, in the first instance, to make any further proof of title than to prove the execution of the will. They are not bound to show who are the *cestuis que trust.*

If facts have transpired since the death of the testator, or any other circumstances exist, by which the trust has come to an end, it is incumbent upon the defendant to prove them.

The law never presumes the existence of a will, in the absence of proof; nor, after its existence has been proved, will it presume that it embraced the real as well as the personal property of the testator.

Where a testator, by his will, conveyed all his real estate, in America or the West Indies, to trustees, in trust to sell, dispose of or otherwise convert the same into money, and to apply the proceeds, first, in payment of his debts, and the residue in purchasing real estate in Scotland, to be conveyed and settled for the uses and trusts expressed in a settlement or deed of disposition which he had executed, of his estates in Scotland; *Held,* that if the will was good and legal on its face, to pass the title to the trustees, it was sufficient, for the purposes of an ejectment brought by them, for a portion of the lands devised; and that they were not bound to produce and prove the deed of disposition referred to in the will of the testator.

The law will not, in the absence of proof, presume a devise void, as creating a perpetuity.

Proof of the death of a person known to be once living is incumbent upon the party who asserts his death; for it is presumed that he still lives, until the contrary is proved.

Where land is devised to trustees, in trust to sell the same, and apply the proceeds to certain specified objects, without any limitation as to the continuance of the trust, the title will continue in the trustees until the land is sold, or until a court of equity, upon the application of the beneficiary of the trust, or some person having a right to call the trustees to account, shall remove them.

In an action of ejectment, brought by such trustees, the defendant, who shows no title whatever to the premises, can not raise the objection that, by reason of their delay in executing the trust, the plaintiffs are divested of the title to the lands in question.

EJECTMENT, tried at the Steuben circuit in August, 1848, before Marvin, justice. The plaintiffs claimed to be the trustees and legal owners of the lands known as the Pulteney estate; of which the premises in question, situated in the town of Pratts-burgh in the county of Steuben, are a part.

On the trial, to prove their title to the land in question, the plaintiffs introduced the following documentary evidence:

1. An exemplified copy of a treaty or compact between the state of New-York and the commonwealth of Massachusetts, by commissioners appointed on behalf of each, dated at Hartford in the state of Connecticut, December 16, 1786, properly proved, and recorded in the office of the secretary of state of the state of New-York, February 2d, 1787. By this treaty, among other things, " the state of New-York ceded, granted, released and confirmed to the said commonwealth of Massachusetts, and to the use of the commonwealth, their grantees, and to the heirs and assigns of such grantees. forever, the right of pre-emption of the soil from the native Indians, and all other the estate, right, title and property, (the right and title of government, sovereignty and jurisdiction excepted,) which the state of New-York had, of, in or to, all the lands and territories within the following limits and bounds, that is to say," &c., describing the tract of country bounded on the east by a line commencing in the north boundary line of the state of Pennsylvania in the parallel of forty-two degrees of north latitude, at a point distant eighty-two miles west from the northeast corner of the state of Pennsylvania, and running thence on a due meridian line north to the boundary between the United States and Great Britain, and including all of the state of New-York west of that line, excepting a strip of land one mile wide along the " strait or waters between lake Ontario and lake Erie."

2. An exemplified copy of a record of resolutions of the legislature of Massachusetts, agreeing to sell the same lands to Nathaniel Gorham and Oliver Phelps, adopted and passed, April 1st, 1788. Also, an exemplified copy of a record of an act of the same legislature, passed November 21st, 1788, granting and confirming to the said Gorham and Phelps, so much of the said

land last described, as lies between the eastern boundary thereof, and a north and south line passing through the confluence of the waters of the Genesee river and Kanahasguaicon (Canascraga) creek; recorded in the office of the secretary of state of New-York, February 6th, 1787. 3. A deed from Gorham and Phelps and their wives, to Robert Morris, conveying to the latter the same lands last mentioned, except some parcels which had before been sold, dated November 18th, 1790, duly proved and recorded. 4. A deed from Robert Morris and wife, to Charles Williamson, for the same lands, dated April 11th, 1792, duly acknowledged and recorded. 5. A deed from Charles Williamson and wife, to Sir William Pulteney, for the same lands, dated March 31st, 1801, duly acknowledged and recorded. 6. Exemplified copies of the depositions of John Greig, Robert Troup and Joseph Fellows, taken under and by virtue of an act of the legislature, entitled " An act to perpetuate certain testimony respecting the title of the Pulteney estate in this state," passed January 26, 1821, filed in the office of the register in chancery, August 30, 1821, with the opinion of the Chancellor, that the said " depositions furnished good *prima facie* evidence of the facts therein set forth;" showing, *First.* The death of Sir William Pulteney in the month of May, 1805, intestate, leaving Henrietta Laura Pulteney, his only child and heir at law, him surviving. *Second.* The death of Henrietta Laura Pulteney, intestate, as to her real estate, after having disposed of her personal estate by will, in the month of July, 1808, without issue, leaving Sir John Lowther Johnston, her cousin and heir at law, her surviving; that the said Sir John Lowther Johnston was the only lawful issue of Gov. George Johnston, deceased, who was the oldest brother of Sir William Pulteney, that left lawful issue; and such of the brothers as had been older than said George, having died before the death of the said Henrietta Laura Pulteney. *Third.* The death of Sir John Lowther Johnston, in the month of December, 1811, after having published his last will and testament. 7. An exemplified copy of the last will and testament of Sir John Lowther Johnston, bearing date August 7, 1811, duly proved in the supreme court of this state on the

3d day of January, 1820, and recorded in the office of the clerk of said court; containing, among other devises, the following: "I give, devise and bequeath unto his Royal Highness, Ernest Augustus, duke of Cumberland; Charles Herbert Pierrepoint, Esquire, commonly called Viscount Newark; David Cathcart, Esquire, Advocate in Edinburgh; and Masterton Ure, Esquire, writer to his majesty's signet, in Edinburgh, their heirs, executors, administrators and assigns, all and singular the messuages, tenements, farms, lands, hereditaments and real estate or property whatsoever, in America or the West Indies, of, or to which I, or any person or persons in trust for me, am, is, or are, or, at the time of my decease, shall be seised or possessed of, for any estate of freehold and inheritance, or of freehold only, or for any term or terms for years, and which I have a right to devise, bequeath, or otherwise dispose of, by this my will," &c.; " to have, hold, receive and take," &c., " upon and for the trusts, intents and purposes, and with, under, and subject to, the powers, provisions and declarations hereinafter expressed and contained, of and concerning the same, that is to say: upon trust," &c., " with all convenient speed, or as soon as to them shall seem expedient, to sell, dispose of, or otherwise convert into money," the said real estate, and to apply the proceeds, first, in payment of his debts, and the residue in purchasing real estate in Scotland, to be conveyed and settled for the uses and trusts expressed in " a settlement or deed of disposition which I have executed of my estates in Scotland."

The will also gave to the said trustees and to the survivor or survivors of them, the power of appointing and substituting new trustees, and declared that when there were four existing trustees, the acts of any three of them should be valid, and that when there were but three, the acts of any two of them should be valid.

8. A deed and release of trust from Charles Herbert Pierrepoint to Ernest Augustus, duke of Cumberland, Masterton Ure and David Cathcart, his co-trustees, of all his title and interest in the property held by them under the will of Sir John Lowther Johnston, dated March 1st, 1819, duly proved and recorded.

9. A certified copy of a deed from Ernest Augustus, duke of Cumberland, MastertonUre and David Cathcart, to John Gordon, conveying a joint interest with them in the premises devised in trust, and appointing him a co-trustee, &c., dated November 19, 1827, duly proved and recorded. This instrument appeared to have been executed on behalf of Ernest Augustus, duke of Cumberland, by one Jonathan Brandrett, in the following manner : " Ernest Augustus, duke of Cumberland, (seal) by Jonathan Brandrett on his behalf . and in his name, under, and by virtue of the act of parliament and order of the high court of chancery respectively within named, and all other powers him enabling."

It was admitted that the premises for which the suit was brought, were covered by the conveyances read in evidence ; and the plaintiffs then offered proof, to show that David Cathcart died about the year 1829, and that the defendant was in possession of the land described in the declaration, at the time the suit was brought.

The defendant attempted to show by the testimony of Joseph Fellows, that Charles Williamson was an alien, at the time he took the conveyance from Morris, in 1792. The evidence on that point is stated in the opinion of the court.

It was admitted that Sir William Pulteney, his daughter Henrietta Laura Pulteney, Sir John Lowther Johnston, David Cathcart, Charles Herbert Pierrepoint and the plaintiffs, were aliens, and subjects of the king of Great Britain.

The evidence being closed, the defendant objected to the plaintiffs' right to recover, and moved for a nonsuit on a variety of grounds, which are sufficiently mentioned or referred to, in the opinion of the court. The motion was denied ; and the justice, sitting in the place of a jury, (a trial by jury having been duly waived,) afterwards rendered a verdict for the plaintiffs.

A motion was made, upon a bill of exceptions, to set aside the verdict, and for a new trial.

*R. Campbell*, for the defendant.

*W. Barnes*, for the plaintiffs

*By the Court*, WELLES, J.   No point was made at the trial relative to the sufficiency of the proof of the compact and deed of cession between the states of Massachusetts and New-York, on the 16th day of December, 1786.   By that instrument, New-York cedes and grants to Masssachusetts, forever, the right of pre-emption of soil from the native Indians, and all other the estate, right, title, and property, (the right and title of government, sovereignty and jurisdiction excepted,) which the state of New-York had, of, in, or to, all the lands and territories within certain limits and bounds, which include the premises in question.   The plaintiffs must, therefore, be regarded as having established the title in Massachusetts at the date of the deed of compact and cession.

Whatever objection there may have been, at the trial, to the proof of the grant from Massachusetts to Phelps and Gorham, it is cured by the production, upon the argument, of copies of the resolutions and act of cession of the state of Massachusetts, duly authenticated, according to the act of congress. (*Dresser v. Brooks*, 3 *Barb. S. C. R.* 429, *and cases there cited.*)

The title to the premises in question, passed from Phelps and Gorham to Robert Morris, by deed from the former to the latter, dated 18th November, 1790.   To this there appears to be no objection.

From Morris it passed to Charles Williamson, by the conveyance of April 11th, 1792, unless the objection is well taken, that Williamson was an alien at the time of the conveyance. The only proof that he was an alien, is found in the evidence of Joseph Fellows, who testifies that he understood he was a native of Scotland ; that he lived in this country several years, and held office here ; was a judge of the county courts of Ontario county, and the witness had understood he was a member of the assembly, from the same county, once or twice.   This evidence does not establish that he was an alien.   The most that can be

Duke of Cumberland v. Graves.

said of it is, that it was evidence to go to the jury ; and I think the finding of the judge on the subject, is well supported by the evidence, which, if it proves anything, raises a fair presumption that, if Williamson was ever an alien, he had been naturalized.

The next transition of the title is, from Williamson to Sir William Pulteney, by the quit-claim deed from the former to the latter, dated March 31st, 1801, duly recorded in the office of the secretary of state of this state, on the 21st October, of the same year. To this it is objected, that Pulteney was an alien, and incapable of taking the title, and that the act of April 2d, 1798, does not remove the disability, because it appears, by the deposition of Robert Troup, taken before an examiner in chancery, under the act of January 26th, 1821, that Williamson held the land in trust for Pulteney before and at the time of the conveyance. There is, however, no evidence to show he took the deed from Morris in trust. The trust to which Troup's deposition refers, in this respect, if one existed, might have been created or acknowledged after that conveyance was executed. But the conclusive answer to the objection is, that there does not appear to have been any written manifestation of such trust, at any time. ( *Whelan* v. *Whelan,* 3 *Cowen,* 580. *Jackson* v. *Moore,* 6 *Id.* 725.) Besides, I think it made no difference whether Williamson took or held the lands in trust or not. He took a perfect legal title, which remained in him until his conveyance to Pulteney. The act of April 2d, 1798, under which the conveyance was made, declares, that all and every conveyance or conveyances, thereafter to be made or executed to any alien or aliens, &c. shall be deemed valid to vest the estate thereby granted, in such alien or aliens. (3 *R. S.* 2d ed. 225.) The language is sufficiently comprehensive to embrace sales, purchases, and ecnveyances in trust.

Sir William Pulteney died intestate, in May, 1805, without having conveyed the lands in question, leaving Henrietta Laura Pulteney, his only child and heir at law, upon whom these lands descended, according to the laws of this state. She died in July, 1808, without having conveyed or devised her lands in America, leaving no child, and leaving Sir John Lowther

Johnston, her cousin, who was entitled to inherit them. Johnston died in December, 1811, having on the 7th day of August next preceding made and published his last will and testament, by which, among other things, he devised his lands in America to Ernest Augustus, duke of Cumberland; Charles Herbert Pierrepoint; David Cathcart; and Masterton Ure, in trust, for the purposes in the said will mentioned and specified. The will provided that, in case the said trustees, or any of them, should die, or be discharged from, or refuse, or decline, or become incapable to act in the trusts reposed in them, &c., it should be lawful for the surviving or continuing trustee, or trustees, to substitute any other person, or persons, in the place of the trustee, or trustees, so desiring to be discharged, or refusing, declining, or becoming incapable as aforesaid; and in such event, the remaining trustees should convey the trust estate, &c. to the new trustee, in such a manner, as that he or they should hold the trust property jointly with the continuing or surviving trustee, or trustees, &c. The will also contained a provision, that during the time there should be four actual trustees, it should be competent for three of them to act in the said trusts, and that during the time there should be three trustees only, it should be competent for two of them to act, &c.

Charles Herbert Pierrepoint declined the trust, and by deed, bearing date March 1st, 1819, released his interest in the trust estate to the other trustees. By a deed, bearing date November 20th, 1827, Cathcart and Ure conveyed to John Gordon an interest in the trust property, to hold the same as trustee, jointly with the other trustees, under an appointment, in pursuance of the provision of the will to that effect.

Evidence was given to show that David Cathcart died in 1829. This evidence was sufficient to be submitted to a jury, and the justice, standing in the place of a jury, having found in the plaintiffs' favor on that point, upon the evidence, his decision is not the subject of review upon a bill of exceptions.

Henrietta Laura Pulteney, Sir John Lowther Johnston, and the several trustees under his will mentioned, were all aliens, residents of Great Britain, and were never citizens of the United

Duke of Cumberland *v.* Graves.

States ; and the defendant contends, that by reason of their alienage, they were respectively incapable of taking the title to the lands in question, either by descent, devise, or grant. The plaintiffs' counsel claims that, by the construction of the act of April 2d, 1798, before referred to, as declared by the act of March 5th, 1819, (3 *R. S. 2d ed.* 226,) the disabilities in question are removed. The first section of the last mentioned act provides and declares, "that all and every the deed and deeds, conveyance and conveyances, of or for any lands or tenements within this state, made to any alien, or aliens, in pursuance of the act entitled 'an act to enable aliens to purchase and hold real estates within this state, under certain restrictions therein mentioned,' passed the 2d day of April, one thousand seven hundred and ninety-eight, so far forth as relates to any question or plea of alienism, shall be deemed and adjudged valid and effectual, to vest all and singular the lands and tenements described in and intended to be conveyed by such deed or deeds, conveyance or conveyances, in the several grantees therein named, and their heirs and assigns, according to the nature of the estates thereby created, and in such manner as to authorize the said several grantees and their respective heirs and assigns, being aliens, effectually to give, devise, grant, sell, and convey the same in fee or otherwise, to any other alien or aliens, not being the subject or subjects of some sovereign state or power, then at war with the United States of America, any thing in the said act contained, or any plea of alienism, to the contrary notwithstanding.

By the construction thus given to the act of April, 1798, the alienage of Henrietta Laura Pulteney would be no objection to her taking as heir of her father, Sir William Pulteney, and upon his death, the title of the lands in question became vested in her, by the express terms of the declaratory act. And I am inclined to hold that the latter act, in declaring that deeds made in pursuance of the former one, should vest the lands conveyed, so far as this question of alienism was concerned, in the grantees therein named and their heirs and assigns, in such manner as to authorize such grantees, their heirs and assigns, being aliens, to give,

Duke of Cumberland v. Graves.

devise, grant, sell and convey the same to any other alien or aliens, intended to remove the objection of alienism in case of any number or succession of descents from one alien to another, and also in case of any number of grants or devises between aliens. That the terms "heirs and assigns" are not to be restricted to the immediate heirs or assigns of the grantees in such deeds, &c. but extend to all persons who might inherit the lands, or to whom they might descend or be assigned. This interpretation is in conformity with the well settled construction of similar language employed in conveyances. By the common law, if a conveyance of land was made to a person by name, without adding his heirs and assigns, the grantee would take only a life estate; if it was to him, his heirs and assigns, he took an estate of inheritance, descendible to his remotest posterity, and capable of being conveyed by any one of them upon whom the descent should at any time be cast, and his grantee could take an estate capable of descending or of being conveyed, in the same manner. I think it is in the same sense, that the words heirs and assigns are to be understood in the act of March 5, 1819. If these views are sound, they dispose of all the objections in the case relating to the alienism of parties, in the deduction of the plaintiff's title.

It is objected on the part of the defendant, that Jonathan Brandrett had no authority to execute the appointment of Gordon as co-trustee, and the conveyance to him as such co-trustee of an interest in the trust property, as attorney for and in behalf of Ernest Augustus, Duke of Cumberland. This objection can not avail the defendant, because, admitting the appointment and conveyance is not well executed on the part of the Duke of Cumberland, there appears to be no good objection to its execution by Cathcart and Ure, who constituted a majority of the then actual trustees; which by the express terms of the will, was sufficient. There was no necessity that the appointment should be made under the directions or in pursuance of the order of any court. It derives its force and validity from the provisions and power contained in the will. That such directions were invoked of the court of chancery in England, does not, in my opinion, show that it was necessary, or weaken the power contained in the will,

which was sufficient by the law of this state, independently of any court.

The immaterial and irrelevant recitals in the appointment and conveyance under consideration, not appearing to be repugnant, inconsistent, or illegal, can not have the effect to render nuga-. tory the provisions which are material and pertinent.

The objection taken upon the argument, that the release of Pierrepoint is void, on the ground that it is from an alien to an alien, and that the act of 1798 allowing aliens to take conveyances of real estate, does not allow of a conveyance from trustee to trustee, but only applies to purchasers and heirs, is not well founded. The principles upon which the objection depends have already been considered.

The defendant's counsel contends that the plaintiffs were bound to show who were the *cestuis que trust* of Sir John Lowther Johnston. If this will was valid on its face, I am unable to perceive the force of this point. It conveys the lands to the trustees, and they, by it, acquire a perfect legal title; and on a mere question of title, between them and a stranger and intruder, without color or claim of title adverse to that of the plaintiffs, the former can not call upon them in the first instance to make any further proof, on this point, than of the will. If facts have transpired since the death of the testator, or any other circumstances exist, by which the trust has come to an end, it was incumbent upon the defendant to prove it. The objects of the trust are clearly defined in the will, and were not, at the time it took effect, illegal.

The defendant's counsel also contends that the plaintiffs were bound to show that Henrietta Laura Pulteney did not devise the land in question. The law never presumes a will, in the absence of proof; and the proof which shows she made a will, shows also that it was a will of personal estate only. The argument of the counsel for the defendant is that having proved that a will was made, the evidence showing it was of personal property only, was incompetent, being by parol, and the existence of a will having been proved, the law would presume it was of the real, as well as the personal property of the testatrix. This is not fair rea-

soning. In the first place, the existence of the will could be no more proved by parol, than its contents ; and the fact that the will was of personal estate only, was proved by the same grade and species of evidence, and by the same witnesses, as the fact of the existence of the will at all was proved. The testimony must be taken no farther than it went, and that was that she made a will of her personal estate only. In the next place, the facts showing that she died intestate ·as to the lands in question are proven by the depositions of Col. Troup and Mr. Fellows, taken before an examiner in chancery, under the act of January 26, 1821. The chancellor, in pursuance of the second section of that act, declared his opinion that said depositions furnished good prima facie evidence of the facts therein set forth, and by the third section of the act copies of depositions, properly certified under the seal of the court of chancery, are allowed to be received and read in all courts of this state as prima facie evidence of the facts therein set forth, in all suits which might be depending in the same courts in which the title of the Pulteney estate might be the point in issue. Again ; if Henrietta Laura Pulteney made any disposition of these lands, by devise or otherwise, it was competent for and incumbent upon the defendant to prove it.

The defendant's counsel, in the next place, contends that the plaintiffs were bound to produce and prove the deed of disposition referred to in the will of Sir John Lowther Johnston. If the will was good and legal on its face, to pass the title to the trustees, it was sufficient for the purposes of this suit, and it would have been entirely an act of supererogation for the plaintiffs to have given evidence of the deed of disposition referred to. It certainly was not necessary, in order to vest the title in the trustees, nor would it have contributed to that object, which was accomplished by the express language of the will. If the defendant wanted it for any legitimate purpose, the law provided him with the power and means of proving it. The defendant's counsel seems to suppose that if it was produced, it would show the devise void, as creating a perpetuity. But the law will presume no such thing, in the absence of proof.

There is nothing in the point raised on the part of the defend-

ant that the trustees are to be presumed dead, from the lapse of time since they were heard from. The rule is, that the proof of the death of a person, known to be once living, is incumbent upon the party who asserts his death; for it is presumed that he still lives, until the contrary be proved. (*Wilson* v. *Hodges*, 2 *East's Rep.* 312.) The presumption of death, from any lapse of time which the evidence in this case could justify, would only apply where the individual alledged to be dead, had left the place of his domicil and had not been heard from for seven years or more. (*Doe* v. *Griffin*, 15 *East*, 293.) No such proof was given or offered in the present case.

I am not able to appreciate the position of the defendant's counsel, that "a sufficient time having elapsed to have enabled the trustees to fully execute the trusts of the will of Sir John Lowther Johnston, they are now divested of the title to the lands in question." 1st. It seems to me it is a question in which the defendant has no interest, and which he is not at liberty to raise in this action. He shows no claim whatever to the premises in question; and so long as the beneficiaries of the trust make no complaint of the delay on the part of the trustees, it is not for him to raise the objection, unless by doing so he establishes an outstanding title, in a person or persons other than the plaintiffs, which would not follow, if the premises contained in the proposition were true. Suppose time enough has elapsed to execute the trust, if it has not been fully executed, the title remains in the trustees, and the *cestuis que trust* alone have the right to take measures to compel them to execute, or complete the execution of the trust. The rule that where an estate is conveyed or devised to trustees for particular purposes, the legal estate is vested in them as long as the execution of the trust requires, and no longer, I apprehend only applies to those cases where the will, or instrument by which the trust is manifested, limits the time, either expressly or by implication, for the continuance of the trust; as where the devise is to a person in trust, to receive the rents and profits of the land and apply them to the support of a third person during his natural life, the trust would continue during the life of such person only, and then go to the

heir, unless the will contained some other provision or limitation over. But where the land is devised in trust to sell the same, and apply the proceeds to certain specified objects, without any provision for the cessation of the trust, the title will continue in the trustee until the land is sold, or until a court of equity, upon the application of the beneficiary of the trust, or some person having a right to call the trustee to account, shall remove him. But, 2d, it does not appear by the bill of exceptions that the trustees in the present case have not proceeded with diligence in the execution of the trust. No evidence has been given on the subject; and it would be too much to presume negligence on their part, when all the circumstances—the magnitude of the trust, the situation of the property, and the condition of the country—are considered.

The objection that the defendant was not shown to be in possession of the premises in question, or to have made any claim thereto, at the time of the commencement of the suit, involves a question of fact, which can not be reviewed upon a bill of exceptions, provided it appears there was evidence sufficient to be submitted to a jury on the question, which there clearly was, in this case.

