WENZEL CZECH, as Temporary Administrator, Etc., Plaintiff, *v.* LILLIAN B. BEAN et al., Defendants.

(County Court, Jefferson County, August, 1901.)

Foreclosure — Appointment of temporary administrator — Collateral attack — Presumption of death — Tender.

A temporary administrator, whose function is only to collect and preserve the estate, may be appointed upon much weaker proof, raising a presumption of the death of the intestate, than a permanent administrator.

If there was slight proof of such a character before the surrogate at the time when he appointed a temporary administrator, the appointment cannot be questioned collaterally.

There is no arbitrary rule as to the length of the continued absence which will raise a presumption of the absentee's death.

A formal tender of the principal is necessary to stop interest.

ACTION for the foreclosure of a mortgage.

County Court, Jefferson County, August, 1901. [Vol. 35.

Joseph Nellis, for plaintiff.

Rogers & Atwell, for defendants.

EMERSON, J. The plaintiff prosecutes this action as temporary administrator of one Henry Czech, for the foreclosure of a mortgage executed to said Czech by the defendants on February 1, 1894. The plaintiff is the father of Henry Czech and came from Austria to this country in 1884. He was naturalized in 1892 and since the year 1887 has resided at Sacket Harbor, in the county of Jefferson. The plaintiff's wife remained in Austria, where she still resides, but his son, Henry, followed him to this country in 1886, he then being a lad seventeen years of age. Henry enlisted in the 11th United State Infantry November, 1886, in Dakota, and came to Madison Barracks, Sacket Harbor, with that regiment in 1887. He served his full term of enlistment at Sacket Harbor and was discharged at that place in 1892. He then re-enlisted in the 9th United States Infantry, at Sacket Harbor, and was sent with his company to Oswego. After serving three years on this second enlistment he was discharged at Sacket Harbor in February, 1895. In March, 1895, he went to New York, taking a satchel with him, but leaving the rest of his clothing with plaintiff, and on August 10, 1895, he again re-enlisted in New York in the 21st United States Infantry, then stationed at Plattsburg, N. Y. He remained with his regiment at Plattsburg until March 14, 1898, when he deserted and returned to Austria. The plaintiff last saw him at Plattsburg shortly before his desertion in the spring of 1898. In December, 1899, the plaintiff wrote to Henry at his old home in Austria, but the letter was returned unanswered. The plaintiff then wrote to his wife in January or February, 1900, and received an answer to the effect that Henry staid at home in Austria about six weeks and then left, stating he was going to return to the United States, since which time he has not been seen or heard from. On May 1, 1900, the plaintiff applied for and received from the surrogate of Jefferson county letters of temporary administration upon papers showing substantially the above facts, and the further facts that Henry was a sober and industrious young man who corresponded regularly and at short intervals with the plaintiff prior to his desertion. That he took with him to Austria up-

wards of $250 in money and wrote to plaintiff soon after he reached that country, since which time nothing has been heard from him. The proof before the surrogate further showed that inquiries had been made at the main sea ports of Germany and no information could be obtained of his embarkation. .

During all the time subsequent to the first enlistment the plaintiff resided at Sacket Harbor, and Henry was discharged and reenlisted at that place, except on the occasion of his last enlistment, when he went to New York, taking a satchel as above stated, but leaving his other clothing and belongings at Sacket Harbor. The mortgage recited his residence at Sacket Harbor and it was left in the custody of plaintiff at that place until Henry went to New York to enlist, when he took the mortgage with him, leaving the insurance policy in the possession of plaintiff. There is no contest in this case over the execution of the mortgage or the amount due thereon, but the title of the plaintiff and his right to enforce and collect the same is challenged by the defendants. Herein rests the sole defense interposed by the defendants.

This leads to an inquiry into the jurisdiction of the surrogate to appoint the plaintiff temporary administrator, for if jurisdiction existed then by force of section 2672 of the Code, the plaintiff could maintain this action.

A surrogate's court is one of limited jurisdiction, and persons claiming under the decrees of that court must allege and prove the facts necessary to confer jurisdiction. Matter of Hawley, 104 N. Y. 250-262; Matter of Law, 56 App. Div. 454-458.

It is, however, provided by the Code of Civil Procedure that when such jurisdiction is drawn in question collaterally, and the necessary parties have been cited, it is presumptively established, and in the absence of fraud or collusion is conclusively established by the allegations contained in the papers used before the surrogate. Code, § 2473.

Another rule of law well established in cases of collateral attack upon the judgments of courts of inferior and limited jurisdiction, is that if there is a total defect of evidence to sustain the jurisdiction such judgment will be pronounced void; but if there was proof which had a legal tendency to make out a proper case, even though slight and inconclusive, the adjudication will be upheld until set aside on a direct proceeding for that purpose. Staples v. Fairchild, 3 N. Y. 41; Sheldon v. Wright, 5 id. 497;

Roderigas v. East Riv. Sav. Inst., 63 id. 460; Skinnion v. Kelley, 18 id. 355; Carleton v. Carleton, 85 id. 315; Miller v. Brinkerhoff, 4 Den. 118; People ex rel. Tweed v. Liscomb, 60 N. Y. 568; Potter v. Ogden, 136 id. 396.

In the application of the above rules of law to this case, it will be observed that the temporary administration which the Code authorizes differs materially from a general administration as in case of intestacy. The office of a temporary administrator is to collect and preserve, rather than to distribute, as in case of administration-in-chief. He was formerly called a collector, receiver and trustee, and his powers are now defined by the Code and their exercise circumscribed by conditions looking to the preservation of the property for the absent owner in case he should eventually return. It is not, therefore, to be expected, so far as the presumption of death is concerned, that the same certainty should be proven as in cases of general administration. The Code seems to recognize this distinction and provides that when a person of whose estate the surrogate would have jurisdiction if he was shown to be dead, disappears or is missing, so that after diligent search his abode cannot be ascertained, and under circumstances which afford reasonable grounds of belief either that he is dead or has become a lunatic, or has been secreted, confined or otherwise unlawfully made away with, a temporary administrator may be appointed when necessary for the protection of his property or the rights of his creditors and those who would be interested in the estate if he were dead. Code, § 2670. In proof of the essentials required by the above section, I have no doubt but if Henry Czech had died the surrogate of Jefferson county would have had jurisdiction to administer his estate. The facts of the case all tend strongly to show that his legal residence was Sacket Harbor at the time of his last enlistment, and it, therefore, continued at that place until the time of his desertion. N. Y. Const., art. II, § 3. And besides the fact of residence, the surrogate has jurisdiction to administer the estate of a nonresident where he left property within the county. For the purpose of conferring jurisdiction in such a case, a debt owing to decedent by a resident of the State is regarded as personal property within the county of the debtor. Code, §§ 2476, 2478.

The mortgage in this case contains a covenant to pay, and, therefore, if Henry Czech was a nonresident at the time of his

disappearance, the mortgage debt must be construed as property within the county of Jefferson. There was also sufficient proof before the surrogate that Henry Czech had disappeared or was missing, and that after diligent search the place of his abode could not be ascertained. Whether there was sufficient proof to afford reasonable ground to believe that he was dead, insane, or had been unlawfully made away with, presents, however, a more difficult question. He deserted from the army on March 14, 1898. His mother states that he spent about six weeks in Austria before his disappearance, and the letters in this case were granted on May 1, 1900. At most, therefore, he had been absent less than two years when temporary administration was granted. This leads us to consider what presumptions of death may be indulged in from such an absence. At common law the continuance of human life was presumed until the contrary was proven, but the statutes as to bigamy and life estates (1 Jac. 1, chap. 11, § 2; 19 Car. 11, chap. 6, § 2) made an inroad upon this doctrine by providing that in certain cases a presumption of death might be indulged in after an absence of seven years. This rule was afterwards extended by way of analogy to cases beyond the provision of the statute, and it finally became established that when a party had been absent for seven years without any intelligence as to his whereabouts he was in contemplation of law presumed to be dead. The statutes of James and Charles have, with some modifications, been re-enacted in our State. Penal Code, § 299; Code Civ. Pro., § 841.

And the rule of presumption as to death after an absence of seven years which by analogy is extended to other cases has been frequently declared and applied in the courts of our State. Duke of Cumberland v. Graves, 9 Barb. 595, 608; Sheldon v. Ferris, 45 id. 124; King v. Paddock, 18 Johns. 141; McCartee v. Camel, 1 Barb. Ch. 455.

There is, however, no arbitrary or positive rule in respect to the time when the presumption of death may be drawn from the continued absence of a person. While in analogy to the above statutes seven years is usually adopted as a basis for the application of the presumption, yet it is not absolutely necessary that such a period should elapse, but the length of time required may be abridged and the presumption sooner applied upon proof of special circumstances tending to show an earlier death. In the

latter case the presumption is to be determined as a question of fact upon the evidence as to when the death probably occurred. Merritt v. Thompson, 1 Hilt. 550; Eagle v. Emmet, 4 Bradf. 117.

As an original proposition, I should hesitate to find from the proof adduced before the surrogate that there was reasonable ground to believe that Henry Czech was dead, insane, or had been unlawfully made away with. He had been absent less than two years, and the fact that he was a deserter from the United States military service would furnish a substantial reason for concealing his identity if he in fact returned to this country. In my judgment, the evidence falls far short of raising any reasonable presumption of death. Dunn v. Travis, 56 App. Div. 317; Keller v. Stuck, 4 Redf. 294.

The question presented, however, is not what this court would have decided if the matter had been presented as an original proposition, nor whether the finding that there was reasonable ground to believe the party dead, insane, or unlawfully made away with, is supported by the evidence and would stand the test of a review, but is whether there was any proof before the surrogate which tended to that conclusion. In my judgment, there was such proof, and while taken as a whole it is far from satisfactory, yet it was sufficient to confer jurisdiction upon the surrogate under the rules of law which have been sanctioned and applied in the cases above cited. See, also, Brown v. Landon, 17 Wkly. Dig. 460; Vanderpoel v. Van Valkenburgh Co., 6 N. Y. 190; Wetmore v. Parker, 52 id. 450, 456; Welch v. N. Y. C. R. R. Co., 53 id. 610.

All the other jurisdictional facts were either alleged before the surrogate or proven to exist on the trial. This would seem to be sufficient. Roderigas v. East Riv. Sav. Inst., 7 N. Y. 316–323.

Under the circumstances of this case, the defendants would, in my judgment, be protected in paying the mortgage to the plaintiff. Indeed, it has been held that where administration was granted upon the estate of a person who was still living, there being evidence before the surrogate tending to show that he was dead, a debtor of the estate would be protected in making payment of the claim to such administrator. Roderigas v. East Riv. Sav. Inst., 63 N. Y. 460; Schluter v. Bowery Sav. Bank, 117 id. 129.

The defendants urge that they should not be charged with interest since December 1, 1899, as they were then ready and will-

ing to pay the mortgage. There was no formal tender made at the time, and, in the absence of such a tender, I do not think enough occurred to stop the running of the interest. Halpin v. Phenix Ins. Co., 118 N. Y. 166.

The defendants, however, were not in the attitude of denying their liability to pay the mortgage. They were ready and willing to pay, and only contested the right of plaintiff to collect the same. His right, to say the least, was shrouded in considerable doubt; so much so, that I think the defendants were fairly justified in making the contest that they did. Under these circumstances, no costs should be allowed against the defendants, and a decree of foreclosure should be ordered, without costs, unless the plaintiff releases the defendants from all personal liability, in which case the plaintiff should have costs, payable out of the mortgage debt. Findings may be prepared and, if not agreed to, settled before me on three days' notice. The plaintiff's attorney will serve a copy of this opinion, with the proposed findings.

Ordered accordingly.