## CITY MAGISTRATE'S COURT, NEW YORK CITY. THIRD DISTRICT—FIRST DIVISION,

### December 11, 1912.

# THE PEOPLE v. JOSEPH RACYKOWSKI.

(1.) BIGAMY*—LEX LOCI CONTRACTU—JUDICIAL NOTICE OF FOREIGN STATUTE.

The laws of the State or country where a marriage was performed will govern in questions arising respecting the validity of the marriage contract, unless it is contrary to the prohibition of the natural law, or express prohibition of statute; but the courts of this State will not take judicial notice of the laws or statutes of a foreign State or country.

(2.) SAME—SAME—SAME—PRESUMPTION.

It will be presumed in the absence of proof, that the common law obtains, where the foreign State takes its common law from England.

(3.) SAME—PRESUMPTION OF DEATH.

Evidence considered and held, that there was substantial support for the claim made that the former husband of the presecutrix was dead at the time of her marriage to the defendant.

(4.) SAME—PRESUMPTION OF INNOCENCE.

Where a woman, without positive knowledge of the death of her former husband, a native of Russia, but having heard that he was dead, and a state of revolution having existed for several years in the district in which he lived at the time she last had word of him, and he having enlisted in the Russian army for service in that district prior to the time she learned of his supposed death, contracts a marriage in the State of Connecticut in good faith and in the belief that he is dead, held, that a presumption of innocence arises in her favor which will remove any disability that she might otherwise be under because of the former marriage the absence of positive proof of her first husband's death, or the fact that the necessary time to establish a presumption of death had not elapsed at the time of her second marriage.

(5.) SAME—EVIDENCE.

Evidence considered, and held, that the prosecutrix was capable of contracting a marriage at the time of her alleged marriage to the defendant, and that there is probable cause to believe the defendant guilty of the crime of bigamy.

---

* See note on Bigamy, 27-16.

*Otto H. Droege,* for complainant.

*Alfred I. Dittler,* for defendant.

FRESCHI, C. M.:

The defendant is charged with bigamy. A marriage was solemnized between Josepha Racykowski, the complainant, and the defendant in St. Joseph's Church, in the city of Bridgeport, State of Connecticut, on September 25, 1910. These parties lived together in that city for three months and then came to New York city, living here for two months thereafter. In February, 1911, the defendant left the prosecutrix, and neither has lived with the other since that time.

As part of the People's case, the testimony of the Rev. John M. Strzelecki, rector of the Church of St. Stanislaus in the city of New York, and State of New York, proves that he performed a marriage ceremony on February 26, 1911; between the defendant, who at that time gave his name as John Szmit and Anna Jasiak.

On cross-examination, the prosecutrix testified that she had been previously married to one Michael Prszybecz, in Russia. That about one year thereafter, he enlisted in the Russian army and served in Alexandrovi, in the province of Warsaw, Russia; that the last time she saw Michael was when he was on leave of absence in that country about five years ago; and that her said husband was reported to have been killed in the city of Odessa, Russia, while serving in the army, about July, 1907, according to a communication that she testified she had received while in Alexandrovi from the government under which he had done military service, but this communication is not produced, the prosecutrix claiming that she left it with her uncle in Alexandrovi. She further testified that she called at the government war office and there received the moneys that were due her husband and was told by the colonel of his regiment that

he was dead. Her former husband has never been seen nor heard from since the report of his death. No other investigation to confirm these reports was ever made by the prosecutrix; and shortly thereafter, that is in 1909, she came to this country.

The validity of the Connecticut marriage is attacked, by the defense, claiming that at the time the defendant married the prosecutrix, she had a former husband living, and that the former marriage is valid and existing. Her own admission is that her former husband was seen alive by her about three years before the Connecticut marriage. She believed and acted on the report that came to her that he had been killed in the military service of the Russian Government.

Several presumptions of law and of fact seem to operate and to conflict in this case. There is a presumption of innocence, the presumption of continued life, the presumption of the legality of a marriage, in the absence of any proof of what the Connecticut statutes provide on the subject.

The laws of the State where the marriage was contracted seem to govern. (People v. Crawford, 62 Hun, 160, aff'd, 133 N. Y. 535, 10 N. Y. Crim. 59.) Each State has power to regulate marriage or its dissolution. In this case, the marital status must be determined by the law of the sovereign State of Connecticut, where the first marriage was contracted. The law of the place of contract governs, if valid there, the marriage is to be recognized as such in the courts of this State, unless contrary to the prohibition of the natural law, or express prohibition of a statute. (Battershall's Domestic Relations, 1910 ed., p. 7; Thorp v. Thorp, 90 N. Y. 602; Am. & Eng. Ency. of Law, 2nd ed., Vol. 4, p. 38.)

The courts of this State will not, however, take judicial notice of foreign statutes or the statute law of sister States. (Strodl v. Farish-Stafford Co., 145 App. Div. 406). No proof of the statute law of Connecticut has been offered, and in the absence of such proof, there is no presumption that another State has

a statute law similar to our own; but the presumption is that the common law obtains where the sister State has taken her common law from England.   (Boston Dairy Co. v. Jones Corp., 72 Misc. 17; Fallon v. Mertz, 110 App. Div. 755; Spencer v. Busch, 50 Misc. 284; Vazakas v. Vazakas, 109 N. Y. Supp. 568; Schweitzer v. H. A. P. A. Gesellschaft, 149 App. Div. 900, and cases there cited.)

" Whatever presumptions of this kind may exist, they do not embrace penal statutes (Harris v. White, 81 N. Y. 532, 544), and our statute is penal."   (People v. Chase, 28 Hun, 310, 313.)

Since there is an absence of proof as to the statutory requirements of the law of Connecticut, the validity of the marriage between the prosecutrix and the defendant in that State must be judged by the common law.   At common law, no peculiar form of solemnization was necessary to establish a valid marriage.   An agreement to take each other for husband and wife was deemed sufficient; and when a marriage is proved by competent evidence, the law raises a presumption in favor of its legality, upon which the party can rely until its illegality is proved (Erwin v. English, 61 Conn. 502, 510), unless it is brought clearly within some prohibitory or invalidating statute or rule of law.   (Hayden v. Allyn, 55 Conn. 280, 289.)

The prosecutrix contracted her marriage with the defendant in good faith, believing, as she testified, that her former husband, by a prior marriage, was dead.   She remarried at her peril, of course, and took the risk depending upon ignorance of such absent party being alive.

The law is well settled, in fact, elementary that a valid prior marriage proven to have been in full force and effect at the time of the second marriage renders the latter a nullity.   (People v. Corbett, 49 App. Div. 514, 14 N. Y. Crim. 532.)

In the Corbett case (*supra*), the court said at p. 518: " If a subsisting marriage is for any reason absolutely void, a subse-

quent marriage cannot be punished as bigamy.  *  *  *  Cases might be cited, decided by the highest court in almost every State of the Union, which hold that where a marriage is solemnized between the parties who are prohibited from entering into the relation by statute, such marriage is absolutely void, and that if such void marriage is followed by another and subsequent marriage, the void marriage cannot be made the basis of a conviction for bigamy. Whether the defendant had a lawful wife living at the time of the alleged marriage in Ohio, was a question of fact to be determined by the jury upon all the evidence."

There being no positive proof that the former husband of the prosecutrix was actually alive at the time of her Connecticut marriage, the various presumptions of which I have made mention come into play.

In the case at bar, one of the questions is whether the presumption of continued life of the former husband of the prosecutrix after his departure for the city of Odessa, some three or four years before the Connecticut marriage is sufficient to establish the fact that he was alive at that time. The law deemed it wise to fix a definite period of continued absence, without knowledge to the contrary, to warrant a belief that the absent person is actually dead. Some American cases hold that a person is presumed to be living until the end of the time fixed by law when the presumption arises. (Chase's Stephen's Digest of Evidence, p. 258.) In Commonwealth v. Mash, 7 Met. (Mass.) 472, it was held that one who marries within that time, if the other party be actually living, whether the fact is believed or not, is chargeable with criminal intent, by purposely doing that which the law expressly prohibits. See also Lawyers' Rep. Ann., vol. 27, p. 1097; Staley v. Nebraska, 131 N. W. 1028. A marriage relation or other state of things once established is presumed to have continued until the contrary is shown (Matter of Hamilton, 76 Hun, 200, 208; Gray v.

Finch, 23 Conn. 513; Mules v. Strong, 68 id. 290); but such a presumption is merely one of fact (Cyclopedia of Law, vol. 5, p. 699, *et seq.;* McRae v. Chelsea Fibre Mills, 145 App. Div. 588), and, in some cases, must be confined to a limited period; its effect and permanency must depend upon the special circumstances and different periods in each case, the probabilities, and the nature of the matter in question (Donahue v. Coleman, 49 Conn. 466; Archibald's Criminal Pleading, Ev. & Pr. 24th ed., p. 401, § 3), from which the jury may infer death from an absence less than seven years (Karstens v. Karstens, 29 App. Div. 229, (Opinion Russell J., foot of page 235); Johnson v. Merithew, 80 Me. 111). Each case must stand on its own facts. There is no general rule which can be applied to all cases alike. All depends on the evidence. At best, it is a disputable rule, the correct application of which is conceded to be difficult. (O'Gara v. Eisenlohr, 38 N. Y. 296, 299; Cerf v. Diener, 148 App. Div. 150, 152; Matter of Matthews, 75 Misc. 449, 451; Wigmore on Evidence, vol. 4, par. 2506). Taylor in his work on Evidence (§ 114), says: " Questions of nicety occasionally arise where the presumption of innocence is met by some counter presumption. For example, where a woman, twelve months after her husband (a soldier on foreign service) was last heard of, married a second husband, on a question as to the settlement of the children by the second husband, it was held that it might be presumed that the first husband was dead at the time of the second marriage, though the presumption of the continuance of life would have prevailed had it not been displaced by the stronger legal presumption of innocence; and on a trial for bigamy of a woman who had married again only four years after separating from her first husband, it was held that the law could not presume the continuance of the first husband's life, but that it was a question of fact for the jury whether he was alive or dead at the date of the second marriage." The jury must decide between the presumption of innocence and that

of continued life. (Am. & Eng. Ency. of Law, vol. 4, p. 46.) In this connection the case of Gibson v. State, 38 Miss. 313, is interesting. The defendant there was charged with and convicted of bigamy. He married one Maria Williams in Mississippi on May 1, 1855, and in July, 1855, he married in legal form Ann Cochran in the life-time of his first wife. At the trial the accused showed that Maria had lawfully married in that State one Elijah H. Williams on February 20, 1849. The prosecution then showed that he had left the neighborhood in October, 1849, and never was seen dead or alive thereafter and that, in the winter of that year, Williams had been reported to be drowned in Old River. The defence took the position that the marriage of the accused to Maria Williams was unlawful, because her husband by her former marriage was not proved to be dead, and that the legal presumption of his death, arising from the fact of his continued absence for five years unheard of, cannot be applied in a case of criminal prosecution, as evidence of his death, and thereby render the marriage of the accused with Maria Williams legal, in presumption of law, so as to subject him to the crime of bigamy on account of his subsequent marriage. The court writing in that case said: " The question upon which this position depends is, whether the marriage between the accused and Maria Williams was valid under the circumstances in which it was contracted. * * * The law presumed the marriage to be valid as to him. Spears v. Burton, 31 Miss. 547. And in opposition to that presumption, without evidence destroying it, he cannot be heard to allege that it was illegal, in order to avoid the punishment of his crime in abandoning the duties which he thereby assumed, and contracting marriage with another woman. The presumption is one of innocence, which he cannot complain of because he subsequently committed a crime, in relation to which the presumption in the former case operates against him." The conviction therein was affirmed.

Here the defense asserts that the prosecutrix was not competent to contract a new marriage legal in all respects as to civil rights and criminal consequences, and that her alleged disability had not been removed even by the presumption of innocence. The last cited case differs from the case at bar in the fact that the presumption of death came into existence by lapse of time before the marriage of the prosecutrix in that case; but, nevertheless it seems to be authority for the force and weight to be attached to the presumption of innocence in this class of cases.

The reports as to what the prosecution here had heard do not conclusively prove her first husband dead; but they are sufficient to show that she believed him dead, and they are sufficient to make it a question of fact for a jury. (People v. Dauchy, 148 App. Div. 366, 27 N. Y. Crim. 14.) Whether he was dead or alive at the time of the Connecticut marriage must be settled by the arbiters of fact. (Van Pelt's case, 1 City Hall Rec. 137; Gall v. Gall, 114 N. Y. 109.) Town of Van Buren v. City of Syracuse, 72 Misc. 463.) The court in the last case, at p. 466, quotes sections 408 and 409 in Best on Evidence in which it is stated that "The death of any party once shown to have been alive is a matter of fact to be determined by a jury; and as the presumption is in favor of the continuance of life, the onus of proving the death lies on the party who asserts it."

Indirectly there is an issue that the prosecutrix is guilty of the crime of bigamy, and according to the English cases (see Rex v. Twyning, 2 B. & A. 386; Chase's Stephen's Digest of Evidence, pp. 238, 239 and 240 and the cases there cited), the burden of proving it is upon the one who asserts it. The late case of Johannessen v. Johannessen, 70 Misc. 361, seems to follow this rule and places the affirmative on the party who attacks the validity of the marriage. The action was for a separation. Plaintiff, Anna Johannessen, married one Sandin

in 1897, who admitted later having a former wife living. They separated and she thereafter married defendant to whom she had previously made known these facts. He advised her that her first marriage was void. Mr. Justice Goff wrote: "Apart from the question of ill-treatment the issue tendered by the complaint was the marriage of the parties. This was admitted, but a new issue was raised when defendant pleaded a previous marriage. This cast upon him the burden of proving the validity of the first marriage and of overcoming the presumption that the second marriage was valid. While this may be rebutted by evidence of facts invalidating the marriage, such evidence must be strong, satisfactory and conclusive, although it involves proving a negative." The same rule had been adopted in other cases. See Phelan's case, 6 City Hall Rec. 91; Senge v. Senge, 106 Ill. App. 140; 1 Bishop Mar., Div. & Sep., sec. 956; McKibbin v. McKibbin, 139 Cal. 448; Wenning v. Teeple, 144 Ind. 189; U. S. v. Green, 98 Fed. Rep. 63; Matter of Stanton, 123 N. Y. Supp. 458.

Phelan's case (supra) charged bigamy by reason of Phelan's marriage to Catherine Cain in 1821, during the lifetime of Eliza Buchanan, whom he had married in 1808. One of the defenses urged was that Eliza had a living husband when she married Phelan and that there was a disability on her part to marry the defendant. At page 95, the court said: "With regard to the first ground of defence it is the opinion of the court, that if he wished to avail himself of that objection, the law renders it incumbent on him to show, affirmatively, that when he married this woman, there was a legal subsisting marriage, between her and another man. The ground assumed is, that Buchanan was alive; but this is not proved. This ground of defense, therefore, fails." The jury convicted the defendant.

But in the matter of Hamilton (76 Hun, 200, 208), Mr. Justice Van Brunt seems to rule that it is incumbent upon the prosecutrix to show that the disability had been removed when

she married the defendant.   (See also O'Gara v. Essenlohr, supra.)

While seven years is usually adopted as the basis for a presumption of death yet it is not absolutely necessary that such a period should elapse.   In reviewing the evidence, I find circumstances which tend to show an earlier death.   There is no reasonable ground to believe the former husband of the prosecutrix was alive at the time of the Connecticut marriage.   There was no reason for concealing his indentity and no information had been received from him.   Furthermore, it is common knowledge that in the years 1905, 1906 and 1907, there took place in Odessa, Russia, a series of riotous outbreaks; estates of landowners were set afire, attacks and murders of police officials and representatives of the authorities occurred.   In the matter of the application for the extradition of Jan Janoff Pouren, a political refugee, U. S. Commissioner Hitchcock delivered an opinion on March 30, 1909, wherein he stated that the counsel for the demanding government (Russia) admitted that a state of revolution existed in the Riga district.   It also appeared in that case that political disturbances in other sections of the Russian domain were of frequent occurrence and that the conflicts with the soldiers and police in which many were killed were numerous, covering about that period of time.   The papers in the Pouren case, supra, show that a state of so-called rebellion existed all over the land. - These circumstances coupled with others would tend to prove that there is substantial support for the claim that the former husband of Josepha Raczkowski was killed as she was informed.

There is an abundance of special circumstances here from which a jury may infer death of the prosecutrix's first spouse. His military service, his departure for Odessa, the existence of riots and the known assassination of police officials there, the collection by the prosecutrix of his money at the war office in Russia after his reported death, that he has not been heard

from nor seen since, the fact that there was no reason for his concealment and no evidence of his intent to do so, are potent factors in a case of this kind. In fact, no proof has been brought forth showing that the prosecutrix's former husband was alive at any time after his reported death. Although she has no actual knowledge of the fact, the prosecutrix believed him dead and contracted the Connecticut marriage.

(The length of time may be abridged and the resumption sooner applied. The whole question is one of fact to be determined when death probably occurred. (Czech v. Bean, 35 Misc. 729, 733; Merritt v. Thompson, 1 Hilton N. Y. 550; Eagle v. Emmet, 4 Bradf. 117.) The jury must say whether the evidence is deemed sufficient.)

I am of the opinion that her act was an innocent one based on honest and reasonable belief.

The presumption of innocence of the prosecutrix (Clayton v. Wardell, 4 N. Y. 230; 1 N. Y. Annotated Digest, § 1845, p. 249) has not been overcome. Had she at the time of her second marriage and while her first husband was, in fact, alive had reason to believe him alive, then a charge of bigamy might be sustained against her. (People v. Meyer, 8 N. Y. St. Rep. 256.)

The defendant has offended against the public decency of the State by "having a plurality of wives at the same time" and under the penal law (§ 340) which defined bigamy and prescribed the punishment in case "a person who, having a husband or wife living, marries another person," I believe that there is probable cause to believe the defendant guilty of a violation thereof, and I accordingly, hold him to await the action of the grand jury on this complaint.