In the Matter of Proving the Last Will, etc., of ROBERT RAY HAMILTON.

*Preliminary questions in equity cases — when determined — probate of wills — who may contest — surrogate may determine the status of a contestant — jurisdiction of surrogate to determine as to the validity of a marriage ceremony where a party is under disability — an agreement to marry may be established by circumstantial proof — law of Pennsylvania presumed to be the same as New York — presumption of continuance of marriage — appeals from decrees probating wills — the General Term is a court of original jurisdiction and may take evidence.*

It is a general rule in the conduct of the trial of cases, particularly those in the nature of equity proceedings, where there is a preliminary question as to the right of one of the parties, either to bring the action or to intervene as a defendant, to try such question and to determine the status of the parties before attempting to pass upon the final rights in respect to which the action is brought.

Only those persons who are interested in the probate of a will have the right to contest the same, and one person cannot give another a standing in court which will enable him to contest the probate of a will, by naming him in the petition for its probate as being that which he is not.

Upon the application for the probate of a will, where the right to support or oppose such application depends upon interest, the surrogate has the right to determine the status of the party proposing to contest, and to determine the same prior to taking testimony as to the *factum* of the will.

Upon an accounting for the purpose of the distribution of an estate, the surrogate has the incidental power to construe the will so far as it is necessary to enable him to make his decree of distribution, and by statute, upon the probate of a will, he has the power to make such a construction where it is then required.

A Surrogate's Court has no equity jurisdiction, nor has it the power to annul or set aside, on the ground of fraud, a release executed by the parties interested in the estate, to the executors thereof, although it would undoubtedly have the right to try the question whether a release presented to it had ever been signed or whether it was a forgery.

Upon an application for the probate of an alleged will, a Surrogate's Court may take proof and determine that the alleged widow of the testator was not his lawful widow, and its decision is not a decree annulling a marriage, but simply a determination of the question as to whether the alleged widow had any status in that court as a contestant, by reason of her being the testator's widow.

In order that a ceremony should be a marriage it is necessary that both parties be free to contract, and if either party be under a disability, although they go through the form of a marriage, there is no marriage.

If a person, by reason of an alleged marital relation, seeks to enforce her rights in a court of law, those rights can be defeated by showing that no such relation existed because of the disability of one of the parties at the time of the attempted contract, and the surrogate, in passing upon such question upon the probate of a will, assumes no equity jurisdiction. Any party interested has the right to bring this question to the attention of the surrogate, and in the orderly conduct of the proceedings to ask him to pass upon it.

A surrogate is bound to see that the proceedings before him are regularly conducted, to hear those entitled to be heard and to prevent contests of wills by persons who have no interest therein.

Cohabitation and repute merely do not constitute a marriage. There must be an agreement or contract to be husband and wife; mere living together as such is not sufficient. The agreement to be husband and wife is an absolute and vital prerequisite to constitute a valid marriage, but a valid marriage may be established by circumstantial evidence, and a preponderance of evidence which tends to establish the proposition is all that is required.

Marriage may be inferred from the actions of the parties, their visible relations to each other and their representations to others that at some previous time they had entered into a contract of marriage, and the proof of cohabitation

and repute is circumstantial evidence tending to establish a previously existing fact.

In the absence of proof of the law of Pennsylvania as to marriage, it is presumed to be the same as the common law of New York State.

The relation of marriage being once established, it is supposed to continue to exist until something is proved to have dissolved it.

The General Term of the Supreme Court is a court of original jurisdiction upon appeals from decrees of Surrogates' Courts admitting wills to probate, and it may take additional evidence and must determine questions of fact as it thinks the preponderance of evidence requires.

APPEAL by Evangeline L. Hamilton from that portion of the decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of the New York County Surrogate's Court on the 10th day of March, 1891, which adjudges that the appellant was never the wife and is not the widow of Robert Ray Hamilton, and is not in any wise interested in sustaining or defeating his alleged will, and dismissing her objections to the probate of said will, and her answer to the petition for the probate thereof.

*C. W. Brooke*, for the appellant.

*Elihu Root*, for the respondent.

VAN BRUNT, P. J.:

In August, 1890, Robert Ray Hamilton died in the State of Wyoming, being at the time a resident of this State. The said Hamilton left a last will and testament bearing date the 17th of March, 1890, and on or about the 2d of October, 1890, one of the executors named in said will petitioned the surrogate that a citation might issue to the heirs and next of kin of the deceased, and that the said will of the said Hamilton might be proved as a will of real and personal property, and letters testamentary issued thereon. In said petition the petitioner stated, on information and belief, that one Evangeline L. Mann, otherwise known as Evangeline L. Steele, and also as Evangeline L. Hamilton, then residing at Trenton, in the State of New Jersey, claimed to be the widow of the deceased, and that a certain child known as Beatrice Ray claimed to be the adopted daughter of the deceased. Citations were thereupon issued, amongst others, to said Evangeline L. Steele, otherwise Mann, otherwise Hamilton, and Beatrice Ray, as the heirs and next of kin of Robert

Ray Hamilton, deceased.    Upon the return of said citations the said. Evangeline L. Steele appeared and claimed to be the widow of the deceased, and filed objections to the probate of the will.    Thereupon one of the legatees and beneficiaries named in the will denied the right of the person styling herself Evangeline L. Hamilton, widow of Robert Ray Hamilton, to appear and contest the probate of the will, and also denied, upon information and belief, that said so-called Evangeline L. Hamilton was the widow of Robert Ray Hamilton.

Upon the matter coming on for trial before the surrogate, the surrogate directed that as the status of the appellant claiming to be the widow was denied, and her right to object to the probate denied, the burden was upon her to show that she had a status in court. The counsel for said Evangeline L. Steele thereupon called a witness proving a ceremonial marriage which had taken place between said Robert R. Hamilton and the contestant in the month of January, 1889.    The proponent thereupon proceeded to offer proof, without any objection being made upon the part of the contestant, tending to show that at the time of her alleged marriage with Hamilton the contestant had a husband living, and the contestant offered evidence in reply.    At the close of the testimony the surrogate held the previous marriage to be established, and denied the right of the contestant to appear in the proceeding, and from the decree thereupon entered admitting said will to probate, and adjudging that the contestant was not the widow of Robert Ray Hamilton, this appeal is taken.

The principal objection urged by the counsel for the appellant, which, however, was not taken during the progress of the trial before the surrogate, was that the court erred in trying the question as to the status of the appellant as the widow of the decedent before taking testimony as to the *factum* of the will.

It is urged that the appellant was made a party to the proceeding by the petition of the executor for probate; and that by section 2528 of the Code it is provided that the appearance of a party against whom a citation has been issued has the same effect as the appearance of a defendant in an action brought in the Supreme Court.    We think in the presentation and argument of this objection, which goes to the jurisdiction of the surrogate, that the learned counsel has overlooked the authority which is vested in the surro--

FIRST DEPARTMENT, FEBRUARY TERM, 1894. [Vol. 76.

gate, and which is necessary in the performance of his duties; and that he has also sought to invest the appearance of a defendant in an action in the Supreme Court with a sanctity to which it is not entitled. It is a very familiar rule in the conduct of a trial of cases, particularly those in the nature of equity proceedings, where there is a preliminary question as to the right of one of the parties either to bring the action or to intervene as a defendant, to try such question and to determine the status of the parties before attempting to pass upon the final rights in respect to which the action is brought. Such is the foundation of almost all interlocutory judgments in equity actions, except those entered upon demurrers.

In actions for a partnership accounting, it is familiar practice where the partnership is denied, as to one of the parties, to first try the question of partnership before allowing such party claiming to be a partner to vex the court and the other parties to the litigation with his presence in a controversy in which he may have no interest. So, in the case at bar, only those persons who are interested in the probate of this will had a right to contest the same. The provision of the statute is (if the will relates to both real and personal property, as in this case), that the husband or wife, if any, or the heirs or next of kin of the testator, and all persons in being who would take an interest in any portion of said personal property, and the executor or executors, trustee or trustees named or described in the will shall be cited. And it provides that any person, although not cited, who is named as a devisee or legatee in the will propounded, or who is otherwise interested in sustaining or defeating the will, may appear and support or oppose the application. These provisions of the statute show that only those persons who are interested in the question as to whether the will shall be probated or not, can be heard to support or oppose the application. And it seems to be a proposition which hardly needs a suggestion for its refutation, that one person cannot give another a standing in court for contesting the probate of a will by naming him in the petition as being that which he is not. Any person designated in the will as executor, devisee or legatee, or any person interested in the estate, or a creditor of the decedent, may apply to have a will admitted to probate.

Can it be that any one of these parties, by simply naming another

party as an heir or next of kin, or a wife or husband, as the case may be, can give that person a status to contest the probate of a will in which he has not the slightest possible interest, because the relationship does not exist? Clearly not. As in respect to the other procedures of the Surrogate's Court, those incidental powers which are necessary for the fulfillment of the duties imposed upon him by statute are possessed by the surrogate, as was recognized in *The Matter of Peaslee* (73 Hun, 113). So in reference to the probate of a will, where the right to support or oppose such application depends upon interest, has the surrogate the right to determine the status of the party proposing to contest. Upon an accounting for the purpose of distribution of an estate, the surrogate has the power to construe the will so far as it affects his decree of distribution. This is an incidental power. He now has, by provision of the statute, the power upon the probate of a will to make such construction where then required. And to say that a party may come in and delay the proceedings without establishing any right or status seems to place such proceedings at the mercy of any interloper who may have the assurance to claim an interest, even though without the slightest foundation.

It is urged that the Surrogate's Court has no equity jurisdiction. It is undoubtedly true. And it is further urged that, therefore, the court could not decree that this appellant was not the widow of the testator; and in support of this proposition our attention is called to the well-established principle that the Surrogate's Court has no power to annul or set aside on the ground of fraud, a release executed by the parties interested in the estate to the executors thereof. But it has never been held that the Surrogate's Court had no power to try the question as to whether any such alleged release existed or not. The Surrogate's Court would undoubtedly have the right to try the question of a release presented before him as to whether it had ever been signed, or whether it was a forgery; and it is a similar question which was being determined by the surrogate in reference to the alleged marriage with the testator. He was not making a decree annulling a marriage. He was simply determining the question as to whether the contestant had any status in his court by reason of her being the testator's widow. In order that this performance in New Jersey between Hamilton and the appellant should be a

marriage, it was necessary that both parties should be free to contract, and, if either party was under a disability, although the parties went through the forms of a marriage, there was no marriage, and that is all that the surrogate attempted to determine.

If the appellant, by virtue of an alleged marital relation, was seeking to enforce her rights in a court of law, those rights could be defeated by showing that no such relation existed, because, at the time of the attempted contract, of the disability of one of the parties. This has always been the rule, and the surrogate, in passing upon the status of this contestant, assumed no equity jurisdiction, but was passing upon a legal question.

It is further urged that in any event the legatee who filed the objection to the appearance of the appellant as a contestant of this will, being simply a defendant to this proceeding to probate the will, had no right to question the status of this contestant. The force of this objection we are unable to see. Any party interested had the right to bring this question to the attention of the surrogate, and in the orderly conduct of the proceeding ask him to pass upon it. The proceedings for the probate of the will did not belong to any of the parties, but belonged to the court. The court has a right to bring in other parties, to allow other parties to be heard, and to determine whether parties claiming to be heard have any status in the proceeding whether any of the other parties object or not. It seeems to be assumed by the appellant that the surrogate is the mere agent of the proponents of the will; that he has no powers of his own for the purpose of seeing that justice is done. This is contrary to the whole scope of the authority conferred upon the surrogate in the probate of wills. He is bound to see that the proceedings are regularly conducted, to hear those entitled to be heard, and to prevent contests of wills by persons who have no interest.

Various errors claimed to have been made by the surrogate in the admission of testimony have been called to our attention. But upon an examination of the record we do not see that any of them are deserving of special comment or mention.

It is urged upon various grounds that the proof was wholly insufficient to establish the existence of a marriage between Joshua J. Mann and the contestant; that there was no evidence of a contract of marriage *de verba et presenti* between Mann and this contestant; that

in attempting to contract with Hamilton the contestant was guilty of bigamy if a marriage already existed between herself and Mann, and that there being a presumption of innocence there was no sufficient proof to overcome such presumption. And it is further urged that the parties contesting her right to appear must prove beyond all doubt that she was the wife of Joshua J. Mann at the time of the attempted marriage with Hamilton. The latter proposition seems to show the extremities to which the appellant's counsel must resort in order to support the position he has taken upon this appeal. He claims before this court a dignity of proof in a civil proceeding which does not prevail upon a trial involving the life of the defendant. It is undoubtedly true that cohabitation and repute merely do not constitute a marriage. There must be an agreement or contract to be husband and wife; mere living together as such is not sufficient; the agreement to be such is an absolute and vital prerequisite to constitute a valid marriage. But murder can be proved by circumstantial evidence, and there does not seem to be any reason why a valid marriage may not be established by the same class of proof. Men are convicted and executed without having eye witnesses of their crime. Circumstances which inevitably lead to the conclusion of the commission of the crime are sufficient in a capital case; and in a civil case a preponderance of evidence which tends to establish the proposition is all that is required. So, where the issue is of marriage, although the contract itself may not be established by direct evidence, yet it may be established by circumstances. It may, from the actions of the parties, their visible relations to each other and their representations to others, be inferred that at some previous time they had entered into a contract of marriage, and that is all the dignity of the proof of cohabitation and repute. It is circumstantial evidence tending to establish a previously existing fact, and such proof may be as satisfactory, and often more satisfactory than the much more limited direct evidence which it is ordinarily possible to produce.

It has been further urged as an objection to the character of the proof offered in this case that there was a failure to prove that a contract of marriage *de verba et presenti* was a marriage under the laws of Pennsylvania; and that there was no proof what the laws of that State were; and that there was no proof that this marriage

was existing on the 7th of January, 1887, the time of the attempted marriage, or that no divorce or annullment of any pre-existing marriage was had.

As for the laws of Pennsylvania, in the absence of proof, they are presumed to be the same as the common law of this State. As to the question of the proof that there was no divorce or annullment of any pre-existing marriage, even in a trial for bigamy no such proof is required. The relation once established, it is supposed to continue to exist until something is proved to have dissolved it. And the existence of this marriage between Mann and the contestant having been established, it was incumbent upon her to show that the disability had been removed when she attempted to marry the testator.

It would be impossible, within the limits to which this opinion should be kept, to consider in detail the evidence before the surrogate tending to establish the marriage to Mann. The probative character of such evidence always depends largely upon the peculiar features of each individual case, as will be seen by a reference to the adjudications upon the question as summed up in the case of *Hynes* v. *McDermott* (10 Daly, 423). In the case at bar the evidence of cohabitation and repute was of the most satisfactory and complete character. Indeed, it seems it would have been difficult for the surrogate to come to any other conclusion from all the evidence introduced of the long-existing relations between Joshua J. Mann and the appellant, than that they were husband and wife.

It undoubtedly is true, as claimed by the appellant, that the surrogate seems to have had an exaggerated idea in regard to the force of his adjudications upon questions of fact where he says: "After having ascertained the facts, his finding thereon upon a conflict of evidence is, in my judgment, equivalent to the finding of a jury, and must settle forever in all courts the question of fact involved. If he errs in his application of the law, the appellate courts will correct his mistake. But they are powerless, as they should be in the proper administration of human affairs, to inquire into the fact which he or a jury has determined, as I think, for all time." In the enunciation of this proposition the surrogate seems to have forgotten the provisions of the Code which make the General Term a court of original jurisdiction upon appeals in these proceedings; and they may take

additional evidence, and must determine questions of fact as they think the preponderance of evidence requires.   The powers of the court upon appeal from the surrogate on the probate of a will are entirely different from those upon appeal from the verdict of a jury. And questions of fact upon conflicting evidence are finally determined, not by the surrogate, but by the General Term.

Bearing in mind this responsibility upon the part of the General Term, we not only see no reason to differ from the conclusions arrived at by the surrogate upon the questions of fact, but, as already intimated, we do not see how, under the evidence, he could have reached any other result.

The decree should be affirmed, with costs.

O'BRIEN and PARKER, JJ., concurred.