In the Matter of the Application of MARGARET C. CONKLIN, Appellant, as an Heir at Law and Next of Kin of the Decedent Herein, to Open the Proceedings Heretofore Had Herein, to Require the Filing of a Bond by the Administrators, to Compel the Return of an Inventory and to Compel the Judicial Settlement of the Accounts of ISAAC A. TUTTLE and Another, Respondents, as Administrators, etc., of WILLIAM H. TUTTLE, Deceased.*

Second Department, November 27, 1931.

---

* Revg. 139 Misc. 16.

*Douglas Macduff*, for the appellant.

*David S. Murden*, for the respondents.

YOUNG, J. The facts were agreed upon by stipulation, from which it appears that one William T. Tuttle was married to Sarah M. Lounsbury in or about the year 1860. Seven children were born of such marriage. Four died in infancy, the last child being born prior to 1870. The survivors of these seven children were Isaac A. Tuttle, Theodore M. Tuttle and William H. Tuttle, the above-named decedent.

It was further stipulated that William T. Tuttle and Sarah M. Tuttle ceased to live together as husband and wife and separated in or about the year 1870. Sarah continuing to live with her family in Peekskill.

It was further stipulated that the records of the Reformed Dutch Church of Cortlandt Town at Montrose, N. Y., show that William T. Tuttle of Peekskill and Sarah Osborne were married on June 26, 1880, and that said William T. Tuttle and Sarah Osborne lived together as husband and wife until his death on June 29, 1892. The children born to them were Edward Tuttle, who died many years ago unmarried, and Levi Tuttle, who died on or about January 24, 1922, leaving him surviving several children, of whom petitioner is one. It was further stipulated that, in 1882, William T. Tuttle's first wife, Sarah Lounsbury, was informed that her husband was living with Sarah Osborne in Putnam county and that a son had been born to them.

It was further stipulated that in or about the year 1882, Sarah Lounsbury Tuttle lived with one Samuel L. Turner as his wife, and that it was unknown whether a ceremonial marriage preceded this cohabitation; that William T. Tuttle died on or about June 29, 1892; that Sarah Lounsbury Tuttle died on or about November 11, 1910; that Sarah Osborne Tuttle died on or about November 15, 1904.

The administrators of the estate of the deceased William H. Tuttle herein are his two brothers, Isaac A. and Theodore M. The question involved in this proceeding is whether the appellant, the petitioner herein, with her brothers and sisters, being children of Levi Tuttle, deceased, a child of William T. Tuttle and Sarah Osborne, are legitimate co-next of kin with Isaac A. Tuttle and Theodore M. Tuttle, heirs of the decedent, who are children of

said William T. Tuttle and Sarah Lounsbury, and whether they, as such co-next of kin, are entitled to share in decedent's estate.

The question depends upon the validity of the marriage of William T. Tuttle and Sarah Osborne, and the legitimacy of the son born to them after this marriage, to wit, Levi Tuttle, now deceased, who was the father of the appellant, the petitioner herein.

The appellant insists that the marriage of William T. Tuttle and Sarah Osborne is presumed to be valid in the absence of evidence to the contrary, and proof of its invalidity and of the illegitimacy of Levi Tuttle rests upon the respondents herein because the presumption of the continuance of the first marriage of said William T. Tuttle is not as strong as the presumption of legitimacy. The surrogate held in his opinion as follows: " It is incumbent upon the petitioner, the moving party, to prove the dissolution of the marriage of 1860. The children of the first marriage are not assailing the second marriage of their father. The burden is upon him who assails the validity of a marriage and the legitimacy of children to prove his case by evidence instead of presumptions. In the instant case the petitioner offers no proof directed at the dissolution of the marriage of 1860. Such evidence is not forthcoming."

The appellant asserts that this conclusion of the surrogate is contrary to law and that it has been held in many decided cases that under the circumstances here disclosed it must be presumed that the first marriage between Tuttle and Sarah Lounsbury was dissolved prior to 1880, when Tuttle married Sarah Osborne. In support of this contention, the appellant cites a number of cases: *Barker* v. *Barker* (172 App. Div. 244); *Matter of Matthews* (153 N. Y. 443); *Matter of Biersack* (96 Misc. 161); *Matter of Meehan* (150 App. Div. 681); *Matter of Grande* (80 Misc. 450); *Matter of Cofer* (119 id. 587), and several other cases in various Surrogates' Courts.

These cases lay down the same general rule. *Matter of Meehan* (*supra*) was a case in the First Department, in which Justice Miller wrote the opinion. In that case Meehan, the intestate, married one Caroline McDonald in 1881 and they lived together as husband and wife until the death of the wife in August, 1902. Thereafter Meehan died intestate in March, 1906. Two children were born of this marriage. Upon the application for letters of administration, Meehan's brother and sister appeared and claimed the right to administer, asserting that Meehan's marriage to Caroline McDonald was invalid because he had a wife living at the time it was contracted, and it was shown that a ceremonial marriage

had been entered into between Meehan and one Sarah Ruppius in 1877. They lived together but a short time. There was evidence tending to show that Sarah Ruppius was alive after the second marriage, but she never appeared to make any claim against Meehan's estate. There was some testimony which suggested that Meehan obtained a divorce from her, and the surrogate so found. Justice MILLER said in the course of his opinion: "There are certain presumptions to which both sides agree, i. e., the presumption of innocence, the presumption of the legality of a marriage, which is strengthened if it be a ceremonial marriage, and the very strong presumption which the law always indulges in favor of the legitimacy of children. But the appellants invoke the well-known rule that a state of facts once proved to exist is presumed to continue, and, in particular reliance upon *Matter of Hamilton* (76 Hun, 200), assert that they have proven that Meehan had a wife living when he contracted the second marriage, and at any rate that the case presents conflicting presumptions of equal strength which neutralize each other, leaving the burden upon the one having the affirmative to prove it. * * *

"While there appears to be no case in this State directly in point, there are numerous decisions in other jurisdictions to the effect that, if necessary to support the legality of the second marriage it will be presumed, in the absence of evidence to the contrary, that the first marriage had been legally dissolved. (See *Hunter* v. *Hunter*, 111 Cal. 261; *Pittinger* v. *Pittinger*, 28 Col. 308; *Erwin* v. *English*, 61 Conn. 502; *Potter* v. *Clapp*, 203 Ill. 592; *Boulden* v. *McIntire*, 119 Ind. 574; *Leach* v. *Hall*, 95 Iowa, 611; *Howton* v. *Gilpin*, 69 S. W. Rep. [Ky.] 766; *Killackey* v. *Killackey*, 156 Mich. 127; *Maier* v. *Brock*, 222 Mo. 74; *Thewlis's Estate*, 217 Penn. St. 307; *Carroll* v. *Carroll*, 20 Tex. 731; *Thomas* v. *Thomas*, 53 Wash. 297; 101 Pac. Rep. 865.) We prefer, however, to rest our decision on a somewhat broader ground.

"The law indulges in presumptions from the necessities of the case in the absence of sufficient evidence to establish the fact to be proved. While the known facts may be insufficient of themselves to justify a particular inference, they may tend to weaken or strengthen a particular presumption. There can consequently be no ironclad rule, and, as the surrounding circumstances of different cases are rarely the same, precedents in this class of cases can rarely be controlling. In this case the presumption of the validity of the second marriage is greatly strengthened by the uninterrupted cohabitation of the parties to it for more than twenty years and until the death of one of them, the attitude of their friends, relatives and acquaintances, the birth of children and the

conduct of the alleged former wife. It is not correct, therefore, to say that the presumption of the continuance of the first marriage, assuming it to have been valid, is as strong as the presumption of the validity of the second marriage. We think that where the fact of a marriage, especially of a ceremonial marriage, followed by the long cohabitation of the parties and the birth of children, is established, it is incumbent upon whoever assails the validity of the marriage and the legitimacy of the children to prove his case by evidence instead of presumptions, even if that involve proof of a negative, and especially when, as here, the attempt is made after the lapse of thirty years and the death of the parties, not by any one claiming rights under an alleged prior marriage, but by relatives who would deprive children of their inheritance by branding them as illegitimates.''

The other cases cited refer to the same rule. The surrogate, in his opinion, as already stated, held that the petitioner was bound to prove the dissolution of the marriage between Tuttle and Sarah Lounsbury, citing *Matter of Hamilton* (76 Hun, 200), which case was well distinguished in the opinion in the *Meehan* case, and also *Matter of Grande* (80 Misc. 450), but examination of the latter case shows that the decision held that under the circumstances disclosed in that case there was a presumption that the first marriage was legally dissolved prior to the second marriage. The respondents' attorney cites but two cases in his brief; one being the *Meehan* case, already discussed, and the other the case of *Matter of Cofer* (119 Misc. 587), in which Surrogate FOLEY wrote the opinion.

In the *Cofer* case there was evidence of a ceremonial marriage between the intestate, Lloyd M. Cofer, and Cassandra Cofer in 1883, and the surrogate held that they were legally man and wife and lived together for about twenty-three years, when they separated in 1911. Twin boys were born to this couple. Upon the death of Cofer, letters of administration were granted to Cassandra Cofer, whereupon another woman, by the name of May Bell Cofer, appeared and asked the surrogate to revoke the letters granted to Cassandra and issue letters to her, claiming that she married the decedent in 1919 and was his lawful widow at the time of his death. There was no proof that decedent and Cassandra were ever divorced. There was no issue of the second marriage. The surrogate in his opinion said: '' This situation demonstrates the application of rules as to the various presumptions which the law invokes. (See discussion of the law of presumptions by Chafee, 35 Harvard Law Review [January, 1922], p. 315.) Where there are conflicting presumptions of unequal weight, the stronger will prevail,

and the presumption which has the least probability to sustain it must yield to the more probable one. (*Palmer* v. *Palmer*, 162 N. Y. 130.) While the facts give rise to the presumption of the validity of the second marriage, which was ceremonial, this presumption is destroyed by the presumption of the continuance of the first marriage and by the much stronger presumption of the legitimacy of the issue of the first union. (*Matter of Meehan*, 150 App. Div. 681.)

" From the foregoing facts and principles I find that the decedent and respondent were validly married and that Cassandra Cofer was his wife at the time of decedent's death. (*Hynes* v. *McDermott*, 91 N. Y. 451; *Gall* v. *Gall*, 114 id. 109; *Matter of Tyrrell*, 115 Misc. 715; affd., 198 App. Div. 1001; *Ellis* v. *Kelsey*, 118 Misc. 763; *Matter of Flynn*, Id. 876.) "

In rendering that decision, Surrogate FOLEY seems to have recognized the rule laid down in the *Meehan* case, because that case is cited, but he based his decision evidently on the ground that under the facts disclosed the presumption of continuity of the first marriage was stronger than the presumption of the validity of the second marriage, and a strong reason for this conclusion was that there was no issue of the second marriage.

Coming to a consideration of the facts stipulated in the case before us, it seems to me that there should be a holding that the presumption of legitimacy is stronger than the presumption of continuity of the first marriage. Any other holding renders the children of Tuttle and Sarah Osborne illegitimate, and that should be avoided if possible. The stipulation states that after the first wife, Sarah Lounsbury, learned that her husband was living with Sarah Osborne, she cohabited with another man by the name of Turner. This may be held to be inconsistent with the continuance of the first marriage.

The decree of the Surrogate's Court of Westchester county should be reversed upon the law and the facts, with costs, payable out of the estate, to all parties appearing and filing briefs; and the matter remitted to the Surrogate's Court with direction to enter a decree in accordance herewith.

LAZANSKY, P. J., KAPPER, HAGARTY and SCUDDER, JJ., concur.

Decree of the Surrogate's Court of Westchester county reversed upon the law and the facts, with costs, payable out of the estate, to all parties appearing and filing briefs, and matter remitted to the Surrogate's Court with direction to enter a decree in accordance with opinion. Findings of fact and conclusions of law inconsistent with this decision are reversed.