UNITED STATES of America, on the relation of Alice KAZANOS, ex rel. John Kazanos, Relator

v.

John L. MURFF, District Director, Immigration and Naturalization Service, Respondent.

United States District Court
S. D. New York.

Feb. 11, 1959.

George L. Bourney, New York City, for relator.

Arthur H. Christy, U. S. Atty., for Southern Dist. of New York, New York City, for respondent, Roy Babitt, Sp. Asst. U. S. Atty., New York City, of counsel.

DIMOCK, District Judge.

Alice Kazanos, alleging herself to be the wife of John Kazanos, has sued out a writ of habeas corpus contesting the right of respondent to deport him.

John Kazanos is an alien, a native and citizen of Greece. He last entered the United States for permanent residence on July 3, 1954. The entry was predicated upon his status as a "non-quota immigrant" derived by virtue of a purported marriage, on April 14, 1952, in St. Petersburg, Florida, to the said Alice, a citizen of the United States. The determination of this controversy depends upon the answer to the question whether the marriage to Alice was valid or whether the alien at the time of that marriage

was lawfully married to one Elizabeth Kazanos of Piraeus, Greece.

On January 7, 1958, the alien, under oath, was questioned by an Investigator of the United States Immigration and Naturalization Service. The alien admitted the earlier marriage to Elizabeth in Piraeus in 1935 and that he had had three children by the first wife. The alien said that the first marriage was dissolved in 1946. The Investigator stated that the first wife had written the Immigration Service reporting the alien as a bigamist. The alien said that his first wife had admitted to him in Greece in 1946 that she had had a child by another man. He said that she wrote to him in 1947 asking for money to get a divorce, that he had sent the money and that she had later written "I have received the divorce and you may do as you please now." He admitted that he had not told his second wife of his first marriage and said that his failure to do so was because of his lack of trust in the other's statement that she had got a divorce.

On March 18, 1958, the alien was served with an order to show cause why he should not be deported. The order recited that it appeared that he had "not established" that his marriage in Piraeus, Greece, on November 24, 1935, to Elizabeth Athinaios had been legally terminated. At the hearing upon that order to show cause the alien introduced a copy of a letter from an attorney in Greece stating that the alien's mother had visited him and that he was prepared to institute divorce proceedings based upon the birth of the illegitimate child upon receipt of a power of attorney and a retainer fee in an amount to be fixed by the alien. The alien said that his mother had later gone to the attorney to give him some money. He also said that, in 1948, his wife had written him for some money to get the divorce and that he had sent her $250 for that purpose but that he had never received any reply from her about it. The hearing was adjourned with the principal purpose of the adjournment being "to enable respondent,

if he can, to obtain documentary evidence establishing the termination of his prior marriage."

At the adjourned hearing it appeared that a letter written to the Greek lawyer after the previous session had been returned with the legend "Left without notice".

At that session a letter purporting to have been written in English by the alien's first wife to the Immigration and Naturalization Service at Brooklyn, N. Y., on May 30, 1956, was offered in evidence by the Government. This is evidently the letter which was referred to by the Investigator in the preliminary hearing. It stated that the alien was a bigamist and described him as the son of Vassilios and enclosed what it said was a photograph of him. The alien admitted that it was his photograph but said that he did not recognize the signature, and, on advice of counsel, refused to tell his father's name or to answer any questions with respect to the contents of the letter on the ground that to do so would constitute self incrimination in violation of his constitutional rights. The Special Inquiry Officer then received the letter in evidence.

The hearing was closed after evidence had been admitted as to the alien's family status and earnings but the Special Inquiry Officer agreed to defer decision until May 28, 1958, in order to give the alien an opportunity of procuring "evidence indicating the termination of his first marriage". No such evidence was furnished and, on June 13, 1958, the Special Inquiry Officer rendered his decision directing deportation. He found that the alien's marriage to his present wife was bigamous and void and that their relationship was adulterous. He denied discretionary relief. An appeal to the Board of Immigration Appeals was unsuccessful.

The Special Inquiry Officer in his decision said that he had admitted the letter with the unproved signature because it had a bearing on the issue of discretionary relief. There was thus a complete absence of proof that the first marriage

was still in existence. I understand from this, and from the constant references to the alien's obtaining proof that the first marriage had been terminated, that the Special Inquiry Officer decided that the second marriage was bigamous because the alien had not furnished evidence that the first had been terminated.

I cannot quarrel with a determination that evidence that $250 had been sent to the first wife for a divorce was insufficient as proof that the divorce was actually obtained. I do take issue, however, with the proposition that the burden of going forward with evidence of the termination of the first marriage was upon the alien.

Section 291 of the Immigration and Nationality Act, 66 Stat. 234–235, 8 U.S. Code § 1361, provides "In any deportation proceeding under chapter 5 against any person, the burden of proof shall be upon such person to show the time, place, and manner of his entry into the United States, * * *."

The corresponding section of the earlier law was Section 23, Immigration Act of 1924, 43 Stat. 165–166, 8 U.S.C. § 221, which provided: "[I]n any deportation proceeding against any alien the burden of proof shall be upon such alien to show *that he entered the United States lawfully,* and the time, place, and manner of such entry into the United States, * * *." (Emphasis supplied.)

■ In Vlisidis v. Holland, 3 Cir., 245 F.2d 812, at page 814, Circuit Judge Hastie said: "Actually, it was necessary to show only the single fact that the respondent was an alien, for, once that is proved, the legislative scheme requires the alien to justify his presence within the United States. 66 Stat. 234, 8 U.S.C. § 1361."

Despite Judge Hastie's statement, it seems plain to me that Congress, by eliminating from the old law the provision requiring the alien to support the burden of showing that he entered the United States lawfully, leaves him with only the specified burden of showing the time, place and manner of his entry into the

United States. The burden of showing that it was unlawful rests upon the deporting power.

The respondent does not gainsay that but argues that, since there was proof here of an earlier marriage, the burden of going forward with the evidence of a termination of that marriage rested upon the relator and that proof of the second marriage did not sustain that burden. If so the decision of deportability below was right for the relator did no more than prove a second ceremonial marriage.

■ It is not true, however, that upon proof of a prior marriage the burden of showing its termination rests upon one who relies upon the validity of a subsequent ceremonial marriage. In Hatfield v. United States, 2 Cir., 127 F.2d 575, at page 577, Circuit Judge Swan said that the presumption of the legality of a marriage formally celebrated is "not overcome by proof of a prior marriage, even when the second marriage occurs during the life of the first husband." That was a war risk insurance case where an administrator of the decedent's estate brought the suit although the named beneficiary was a woman who claimed to be the widow and as such would be entitled to the proceeds. She admitted that she had been married to a man who abandoned her eight years before her ceremonial marriage to the decedent and that there had been no divorce. Judge Swan held that her statement was not proof that the second marriage was illegal but was at best proof only that she had no knowledge of a divorce or some other kind of dissolution of the marriage. He concluded that on the record she was proved to be the widow of the insured and the lawfully designated beneficiary of his insurance.

In accord with the Hatfield case are Matthews v. Jones, 5 Cir., 149 F.2d 893, and Harsley v. United States, 88 U.S. App.D.C. 150, 187 F.2d 213. In the latter case Circuit Judge Edgerton said, 187 F.2d at page 214, "Few rules are better settled than that 'A marriage proved to have taken place is presumed to be valid until the contrary is proved. Hence a

death or divorce necessary to remove the impediment of a prior marriage is presumed * * *. While the presumption may be rebutted, the rebutting evidence must be strong, distinct, satisfactory, and conclusive.' ", citing Madden on Persons and Domestic Relations (1931) pp. 66, 69.

Circuit Judge Soper in Page v. United States, 4 Cir., 193 F.2d 936, held that in a national service life insurance policy case the question of the presumption of validity as between successive marriages was governed by the North Carolina law where the suit was brought in the North Carolina District and the second marriage had taken place there.

■ Here the suit is brought in a New York District and the marriage was solemnized in Florida. In each of these jurisdictions, as in the federal courts above cited, the burden is upon the party attacking the validity of a second marriage to show the continued existence of the first. Matter of Tuttle's Estate, 234 App.Div. 1, 254 N.Y.S. 65, affirmed Conklin v. Tuttle, 260 N.Y. 663, 184 N.E. 136; J. J. Cater Furniture Co. v. Banks, 152 Fla. 377, 11 So.2d 776.

Respondent argues that the finding of a bigamous marriage is conclusive upon the courts, being a finding of an administrative agency with evidence to support it, citing Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938, and Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082. The difficulty with this argument is that there is no evidence here to support the finding. The administrative agency proceeded solely upon the alien's supposed inability to obtain evidence of the termination of the marriage.

■ The case will be disposed of as did the District Court in Prentis v. McCormick, a case which was affirmed by the Court of Appeals for the Sixth Circuit at 23 F.2d 802. There the District Court, on habeas corpus, discharged an alien from the custody of the immigration authorities. The alien admitted that there had been a first marriage and that there had been no divorce but the Court of Appeals said in affirming, at page 803,

that these facts, in the absence of a showing that the alien's first husband was alive at the time of his second marriage, did not show the second marriage to have been bigamous, as against the formal ceremony thereof "in favor of which there is a presumption of validity".

The alien will be discharged.

Settle order on notice.